UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

        Plaintiff,                        Civil Case No. 14-CV-12005
                                                  Honorable Linda V. Parker

v.

MICHELLE AUSTIN and LAURA BROWN,

        Defendants.
_____/

## SECOND AMENDED OPINION AND ORDER

Metropolitan Life Insurance Company ("MetLife") initiated this interpleader action to determine the disposition of the proceeds of a life insurance policy owned by Clara Austin, who died in 2013. Defendant Laura Brown ("Ms. Brown"), the adult great niece of Clara Austin, was named the primary beneficiary of the policy in March 2008. At that time, Michelle Austin ("Ms. Austin"), Clara Austin's adult granddaughter, was removed as the primary beneficiary. Ms. Brown and Ms. Austin each claim entitlement to the insurance proceeds. For the reasons that follow, the Court concludes that the beneficiary designation naming Ms. Brown as the beneficiary of the life insurance benefits is void, as Clara Austin lacked the competency to complete the change.

## Background

Clara Austin, a retiree from General Motors Corporation, was a participant in the General Motors Life and Disability Benefits Program (the "Plan"), an employee welfare benefit plan regulated under the Employee Retirement Income Security Act ("ERISA"). (ECF No. 1 ¶ 6.) The Plan is funded by a group life insurance policy issued by MetLife. (*Id.*)

The latest beneficiary designation on file with the Plan for Clara Austin is dated March 21, 2008. (*Id.* ¶ 11.) The form was completed via the Internet (i.e., online) and names Ms. Brown as the sole primary beneficiary of Clara Austin's life insurance benefits. (*Id.*, citing ECF No. 1-4.)

The next prior beneficiary designation on file with the Plan for Clara Austin is dated October 17, 2005, and names Ms. Austin as the sole primary beneficiary of the life insurance benefits. (*Id.* ¶ 12, citing ECF No. 1-5.) This beneficiary designation also was completed online. (*Id.*)

Clara Austin died on May 22, 2013. (*Id.* ¶ 13; ECF No. 1-6.) At the time of her death, Clara Austin was enrolled under the Plan for life insurance coverage in the total amount of $16,813.00 ("plan benefits"). (*Id.* ¶ 14.) Ms. Austin and Ms. Brown submitted life insurance claim forms to MetLife for the plan benefits. (*Id.* ¶¶ 15, 16; ECF Nos. 1-7, 1-8.) Ms. Austin filed an allegation of fraud with

MetLife, contesting the latest beneficiary designation. (*See* ECF No. 1-13 at Pg ID 66.)

To resolve the conflicting claims, MetLife filed this interpleader action on May 20, 2014. MetLife thereafter deposited the full amount of the plan benefits with the Court, minus its costs and attorney's fees totaling $1,400.00, and was dismissed from this case. (ECF No. 9.)

## Applicable Law and Analysis

As a general rule, the proceeds of an ERISA plan are to be paid in accordance with the plan documents. *See Unicare Life & Health Ins. Co. v. Craig*, 157 F. App'x 787, 791-92 (6th Cir. 2005) (quoting *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996)) (explaining that the Sixth Circuit has consistently held that Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), establishes "a clear mandate that plan administrators follow plan documents to determine the designated beneficiary.") However, the improper procurement of a beneficiary designation would call into question the validity of the plan document itself and, thus, creates a limited exception to this general rule. *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 n.1 (6th Cir. 2000).

The Sixth Circuit Court of Appeals "has held that claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law." *Id.* at 704 (citing

3

cases). Thus the determination of which claimant is entitled to the proceeds from Clara Austin's life insurance plan due to the alleged "fraud" on the 2008 beneficiary designation change form is preempted by ERISA and governed by federal law. *Id*. As such, this court must "look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *Id*. (citing *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990)).

As the *Tinsley* court found, ERISA "does not contain any provisions regulating the problem of beneficiary designations that are forged, the result of undue influence, or otherwise improperly procured[.]" *Id*. The court further found that "there is no established federal common law in [the Sixth C]ircuit dealing with forgery and undue influence in the designation of beneficiaries," and thus it is necessary to look to state-law principles for guidance. *Id*.

Under Michigan law,

> " 'In determining the mental competency of [the] insured to change the beneficiary of an insurance policy, . . . the test is whether he had sufficient mental capacity to understand the business in which he was engaged, the extent of his property, the manner in which he desired to dispose of it, and who were dependent on him.' "

*Metro. Life Ins. Co. v. Davis*, No. 10-12005, 2010 WL 3941449, at *2 (W.D. Mich. Oct. 6, 2010) (quoting *Aetna Life Ins. Co. v Yablonsky*, 157 F. Supp. 90, 92 (E.D. Mich. 1957) (quoting *Grand Lodge, Ancient Order of United Workmen v. Brown*,

4

125 N.W. 400, 403 (1910))).  Adults are presumed to be competent enough to enter into contracts.  *See*  3 Couch on Ins. § 40:2 (3d ed. 2015) (citing cases).  However, "[a] person under guardianship is conclusively presumed to be incompetent." *Davis*, 2010 WL 3941449, at *2 (citing *Acacia Mut. Life Ins. Co. v. Jago*, 273 N.W. 599, 599 (Mich. 1937) ("[W]hile an insane or incompetent is under actual and subsisting guardianship of estate, he is conclusively presumed incompetent to make a valid contract, notwithstanding it was made during a lucid interval.")); *see also Stevens v. State Farm Mut. Auto. Ins. Co.*, No. 285766, 2009 WL 3683317, at *2 (Mich. Ct. App. Nov. 5, 2009) (same); *Franklyn v. Maxwell*, No. 27013, 2007 WL 4404697, at *2 (Mich. Ct. App. Dec. 18, 2007) ("Michigan law has long held that a person under guardianship is conclusively presumed incompetent to make a valid contract and that any contract made by a person under guardianship is void.").

According to the records of the Wayne County Probate Court, a guardianship petition identifying Clara Austin as a legally incapacitated individual was filed on September 14, 2007, and Ms. Brown was appointed as Clara Austin's guardian in November 2007.[1]  *See In re Guardianship of Clara Austin*, Case No.

---

[1] Ms. Brown also was appointed to serve as Clara Austin's conservator sometime in April 2009.  (*See* ECF No. 1-12 at Pg ID 60.)  The Wayne County Probate Court subsequently removed Ms. Brown as Clara Austin's conservator, however, after Clara Austin's guardian ad litem objected to Ms. Brown's annual account for the (Cont'd . . .)

5

2003-668254-GA (Wayne Cnty. Probate Court).[2] Ms. Brown remained Clara Austin's guardian until Clara Austin's death in 2013. *Id*. As such, Clara Austin was incompetent to change the beneficiary of her life insurance policy when the change was made in March 2008.

Ms. Brown in fact admitted during a status conference with the Court that she, not Clara Austin, submitted the beneficiary designation form making herself the primary beneficiary of Clara Austin's policy in 2008. According to Ms. Brown, she made the change to comport with Clara Austin's wishes, as expressed to Ms. Brown previously. However, Ms. Brown lacked the authority to make this change:

> Since an ordinary agency is terminated by the insanity of the principal, the authority given to his or her agent by an insured to change the beneficiary of an insurance policy as directed, which was not exercised until after the insured was declared a mental

---

period between February 28, 2010 and February 28, 2011. *In re Conservatorship of Clara Austin*, No. 308676 (Mich. Ct. App. July 18, 2013) (unpublished opinion). The probate court and the Michigan Court of Appeals found that Ms. Brown had no receipts for $26,000 in expenditures, failed to provide copies of tax returns filed on behalf of Clara Austin, failed to provide copies of all utility records to determine Clara Austin's 1/6 share of those expenses, and failed to provide documentation that she had complied with the probate court's order to purchase a prepaid funeral plan for Clara Austin. *Id*. Notably, it appears that Ms. Brown in fact never purchased a prepaid funeral plan for Clara Austin, as the funeral home where her deceased body was delivered was sending letters to Ms. Austin as late as September 22, 2014 (eighteen months after her death), seeking directions as to the disposition of Clara Austin's body and payment for the disposition. (*See* ECF No. 14 at Pg ID 226.)

[2] Available at www.public.wcpc.us/eservices.

> incompetent and was placed under guardianship both as to person and estate, does not survive the adjudication of incompetency, and may not thereafter be exercised by the agent.

4 Couch on Ins. § 60:13 (3d ed. 2015); 21 A.L.R.2d 1191 (discussing the power of a guardian to change the beneficiary in a ward's life insurance policy).[3] As such, the Court concludes that the purported designation of Ms. Brown as a beneficiary of the life insurance policy of Clara Austin is invalid and, therefore, ineffective for purposes of paying any benefits under the policy.[4]

---

[3] To the extent Ms. Brown could have made the change after obtaining approval from the probate court, the probate court docket does not reflect that such approval was sought or granted.

[4] Alternatively, the Court would find that the designation of Ms. Brown as the primary beneficiary of Clara Austin's benefits resulted from undue influence. Whether undue influence has been exerted is a fact intensive inquiry that looks at such factors as:

> the physical and mental condition of the benefactor; whether the benefactor was given any disinterested advice with respect to the disputed transaction; the "unnaturalness" of the gift; the beneficiary's role in procuring the benefit and the beneficiary's possession of the document conferring the benefit; coercive or threatening acts on the part of the beneficiary, including efforts to restrict contact between the benefactor and his relatives; control of the benefactor's financial affairs by the beneficiary; and the nature and length of the relationship between the beneficiary and the benefactor.

*Tinsley*, 227 F.3d at 705 (citations omitted). Unable to care for herself, Clara Austin had come to live with Ms. Brown approximately six months before Ms. Brown was named as the primary beneficiary of the plan benefits. As a result of Clara Austin's mental incapacity, Ms. Brown was acting as Clara Austin's guardian at the time. Ms. Brown changed the beneficiary designation herself and benefitted from the transaction.

For the above reasons, the Court holds that the beneficiary designation that controls the disposition of the plan benefits is the designation naming Ms. Austin as the primary beneficiary.

Accordingly,

**IT IS ORDERED** that the plan benefits are awarded to Michelle Austin;

**IT IS FURTHER ORDERED** that the Clerk of the Court is **DIRECTED** to pay the principal of seventeen thousand four hundred seventy nine dollars and sixty two cents ($17,479.62), plus one hundred percent (100%) of the accumulated interest, forthwith to Michelle Austin, 16957 Brandt Street, Romulus, MI 48174.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: December 11, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 11, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury<br>
Case Manager